UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND,<br><br>Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:26-cv-01041 RDA/IDD |
| NWI HEATING AND AIR SOLUTIONS, LLC, *et al.*,<br><br>Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Board of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF" or "Fund"), Motion for Default Judgment Pursuant to Fed. R. Civ. P. 55(b) ("Motion") [Dkt. No. 10], against NWI Heating and Air Solutions, LLC ("NWI Solutions") and NWI Heating and Air, LLC ("NWI Air") (collectively "the Defendants"). After the Defendants failed to timely file a responsive pleading or otherwise defend this action, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, and the supporting documentation thereto, the undersigned Magistrate Judge makes the following findings and recommends that the Motion be **GRANTED** against NWI Solutions and NWI Air.

## I. INTRODUCTION

On April 16, 2026, Plaintiff filed this action under Sections 502(a)(3), (d)(1), (g)(2), and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C.

§§ 1132(a)(3), (d)(1), (g)(2), and 1145, and Section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185. Compl. ¶ 1. ERISA allows parties to enforce provisions of collective bargaining agreements. In its Complaint, Plaintiff seeks a monetary judgment against Defendants awarding unpaid contributions, accrued interest, liquidated damages, and attorneys' fees and costs, through the date of judgment. Compl. ¶ 1.

**A. Jurisdiction and Venue**

This Court has subject matter jurisdiction over this case, pursuant to 28 U.S.C. § 1331, because this case arises under a federal law, ERISA. Further, jurisdiction is conferred upon this Court by Sections 502 and 515 of ERISA. 29 U.S.C. §§ 1132 and 1145.

The Court has personal jurisdiction over Defendants NWI Solutions and NWI Air, pursuant to ERISA, which provides that any action brought under the statute "may be brought in the district where the plan is administered." *See* 29 U.S.C. § 1132(e)(2). ERISA also allows for nationwide service of process. *Id*. "Where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with [the due process requirements of] the Fifth Amendment [of the U.S. Constitution]." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Services, Inc.*, 791 F.3d 436, 443 (4th Cir. 2015). To support a Fifth Amendment challenge, a defendant must show that "the district court's assertion of personal jurisdiction over [them] would result in 'such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy' evidenced by a nationwide service of process provision." *Id*. at 444 (quoting *Denny's, Inc. v. Cake,* 364 F.3d 521, 524 n. 2 (4th Cir. 2004)). A citizen or corporation of the United States would have difficulty showing such extreme inconvenience or unfairness. *Denny's*, 364 F.3d at 524 n. 2.

Here, the Fund is administered in Falls Church, Virginia, Compl. ¶ 3, which is within the

Eastern District of Virginia, and, as discussed below, Defendants were properly served with process. Because the Defendants' principal place of business is in Portage, Indiana, it would be "highly unusual" for the Defendants to show that any "inconvenience will rise to a level of constitutional concern." Compl. ¶¶ 7–8; *Plumbers & Pipefitters*, 791 F.3d at 444. Therefore, this Court has personal jurisdiction over the Defendants.

Finally, venue is proper in this district, under Section 502(e)(2) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 185(c), as the Fund is administered in this district. *See* Compl. ¶ 3. Therefore, venue is appropriate in this Court.

**B. Service of Process**

Under 29 U.S.C. §§ 1132(e)(2) and 185(d), service of process is proper in any district where a defendant resides or may be found. Although §§ 1132(e) and 185(d) state where a defendant may be served, the Federal Rules of Civil Procedure provide the manner in which service must occur. Under Rule 4(h), service upon a corporation, partnership, or other unincorporated association shall be effected "in the manner prescribed by Rule 4(e)(1) for serving an individual; or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ P. 4(h).

On April 27, 2026, a private process server served Defendant NWI Solutions by delivering the summons, Complaint, and related materials to Melissa Lopez, the registered agent of NWI Solutions. Mem. in Supp. of Mot. for Default J. at 3, 7. Defendant NWI Air was also served on April 27, 2026, through a private process server. *Id.* The summons, Complaint, and related materials were delivered to John Lopez, the registered agent of NWI Air. *Id.* Therefore, Plaintiff properly served the Defendants through their registered agents, pursuant to 29 U.S.C. §§ 1132(e)(2) and 185(d) and Rule 4(h).

**C. Grounds for Default**

Plaintiff initiated this action by filing the Complaint on April 16, 2026. Dkt. No. 1. Defendants NWI Air and NWI Solutions failed to answer or file any other responsive pleading after receiving the Complaint. On June 2, 2026, Plaintiff filed a Request for Clerk's Entry of Default with the Clerk. Dkt. No. 8. On June 12, 2026, the Clerk entered default against the Defendants. Dkt. No. 9. On June 16, 2026, Plaintiff filed a Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b), and the undersigned conducted a hearing on the matter on July 10, 2026. Dkt. Nos. 10, 13. Defendants failed to appear at the hearing, respond to the Motion for Default Judgment, or otherwise defend this action. Accordingly, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Dkt. No. 13.

## II. EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. *See Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). Foremost, a court must be satisfied that the complaint states a legitimate cause of action. *See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to the plaintiff where the plaintiff failed to state a claim). A defendant in default concedes the factual allegations of the complaint. *See, e.g.*, *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (noting default has the effect of admitting the factual allegations in the complaint). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d

1200, 1206 (5th Cir. 1975)). Instead, the court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Ryan*, 253 F.3d at 780.

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

## III. FACTUAL FINDINGS AND ANALYSIS

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that Plaintiff has established the following facts. Plaintiff is the trustee and named fiduciary of a multi-employer employee benefit plan administered at 3180 Fairview Park Dr., Suite 400, Falls Church, VA 22042. Compl. ¶ 5. Defendants are Indiana corporations, and their principal places of business are in Portage, Indiana. Compl. ¶¶ 7–8. Additionally, Defendants are "employer[s] in an industry affecting commerce," as defined by 29 U.S.C. § 1002(5). *Id*.

At all times through February 3, 2023, Defendant NWI Solutions was a signatory to a Collective Bargaining Agreement ("CBA") with the International Association of Sheet Metal, Air, Rail and Transportation Union (formerly known as the Sheet Metal Workers' International Association), Local Union No. 20 ("Local 20" or the "Union") and was thus obligated to pay benefit

contributions to the Fund for all hours worked by the Defendant's covered employees within the jurisdiction of Local 20. Compl. ¶¶ 9–10. The CBA was in effect from July 1, 2020 through June 30, 2023. Mem. in Supp. of Mot. for Default J. at 2. On December 2, 2020, NWI Solutions agreed to the terms of the CBA. *Id.* Pursuant to the CBA, NWI Solutions is obligated to abide by the terms and conditions of both the Trust Agreement, which established the Fund, and "any amendments thereto and policies and procedures adopted by the Board of Trustees ("Trust Document")." Compl. ¶¶ 10–11. While NWI Air is not a signatory to the CBA with Local 20, "NWI Air is an alter ego and/or successor of NWI Solutions," and is therefore liable for NWI Solutions' obligations to the Fund. Compl. ¶ 23. NWI Solutions and NWI Air had interrelated operations, including common ownership. Both businesses operated out of the same building, and NWI Air substantially continued NWI Solutions' operations upon NWI Solutions dissolution in March 2024. Compl. ¶ 24. Further, the companies employed the same or similarly classified employees, with the same or similar training, allowing NWI Air to use NWI Solutions' employees without fulfilling the financial obligations under the Local 20 CBA. Compl. ¶¶ 24–25.

Defendants failed to pay Exit Contributions as required under the CBA once the Defendants' obligations under the CBA ceased on February 3, 2023. Compl. ¶¶ 33-35. Plaintiff seeks $41,041.79 in delinquent Exit Contributions, liquidated damages, and interest (as of June 26, 2026). Compl. ¶ 38; Mem. in Supp. of Mot. for Default J at 17. Plaintiff requests $3,222.98 for reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 1132(g)(2) and 28 U.S.C. § 1961. Mem. in Supp. of Mot. for Default J at 17.

Section 515 of ERISA, 29 U.S.C. § 1145, provides that employers obligated to make contributions to a multi-employer plan under the terms of a collectively bargained agreement shall make such contributions in accordance with the agreement. Section 502 of ERISA, 29 U.S.C. § 1132(g)(2), establishes the damages imposed on an employer who fails to make the required

contributions. Under that provision, in an action to enforce Section 515, the court shall award the plan unpaid contributions, interests on the unpaid contributions, liquidated damages provided for under the plan, not to exceed 20 percent of the unpaid contributions, reasonable attorneys' fees and costs, and other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2). If an employer breaches its contract with a labor organization, Section 301 of the LMRA, 29 U.S.C. § 185(a) provides that the organization may bring suit in any district of the United States having jurisdiction over the parties. 29 U.S.C. § 185(a).

**A. Count I – NPF's Claim for Exit Contribution**

According to the CBA and the NPF Trust Agreement, Defendant NWI Solutions was required to provide reports and timely contribute to the Fund in accordance with those reports. Compl. ¶ 10; Mem. in Supp. of Mot. for Default J at 2. NWI Solutions failed to pay Exit Contributions as required under the CBA once the Defendant's obligations under the CBA ceased on February 3, 2023. Compl. ¶¶ 33–35 The NPF filed a declaration in support of its Motion, reflecting that NWI Solutions owe unpaid Exit Contributions in the amount of $32,388.84 for the 36-month period proceeding February 2023. Compl. at 11; Decl. of Daniel Hagerman (hereinafter, "Hagerman Decl.) at 6–7.

The NPF Trust Agreement provides that a participating employer is liable for an Exit Contribution to the Fund if it "(i) ceases to have an obligation to contribute to the NPF, and (ii) had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute but was not required to pay withdrawal liability under Title IV of ERISA." Compl. ¶ 15; Hagerman Decl. at 3. "The amount of an employer's Exit Contribution is equal to the amount of the employer's contributions due for the 36-month period preceding the month in which the employer ceased to have an obligation to contribute to the NPF." Compl. ¶ 18. Exit Contributions are required to be paid no later than the 20th day of the month after which the Fund assessd the Exit Contribution and sent a demand letter. Hagerman Decl. at 4. An employer's failure to pay an Exit Contribution

constitutes delinquency and is treated in the same manner as all other delinquent contributions. Hagerman Decl. at 4. Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, the Agreement, the Trust Documents, and Section 301 of the LMRA, 29 U.S.C. § 185, if an employer fails to timely submit the contractually required contribution payments, the Fund can file a lawsuit to recover (1) the unpaid contributions, (2) interest on the delinquent contributions at a rate of 0.0233% per day compounded daily, and (3) liquated damages "equal to the greater of interest on the delinquent contributions at the above rate or liquidated damages equal to twenty percent (20%) of the delinquent contributions owed upon commencement of litigation." Compl. ¶ 21.

NWI Solutions ceased to have an obligation to the NPF as of February 3, 2023, which constituted a withdrawal under Title IV of ERISA, but NWI Solutions was not required to pay withdrawal liability under ERISA's *de minimis* rule. Compl. ¶ 33. Plaintiff notified NWI Solutions via letter on August 6, 2025 that an Exit Contribution of $32,388.84 was assessed. Compl. ¶ 34. No payment was made by the Defendant. Compl. ¶ 35. NPF sent a second letter on November 5, 2025, informing the Defendants that they were delinquent in paying their Exit Contribution. Compl. ¶ 35. To date, Defendants have not paid their financial obligations to the Fund. Thus, Defendants owe interest in the amount of $2,175.18 (calculated through June 26, 2026), and liquidated damages in the amount of $6,477.77, calculated as 20% of the delinquent Exit Contribution. Hagerman Decl. at 7. In sum, the Court finds that the Fund is owed a total of $41,041.79 in Exit Contributions, liquidated damages, and interest.

Plaintiff also argues that NWI Air should be held joint and severally liable in this case under the theory that NWI Air is an alter ego of NWI Solutions. *See* Compl. ¶ 22; Mem. in Supp. of Mot. for Default J. at 12–14. District courts within the Fourth Court have used the following standard when evaluating alter ego claims in ERISA cases: the court will look at (1) whether "substantially" the same entity controls both the new and old employer; and (2) whether the transfer resulted in an

expected or reasonably foreseeable benefit to the older employer related to the elimination of its labor obligations. *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. JTL Air Conditioning & Refrigeration, Inc.*, No. 119-cv-00169LMBMSN, 2019 WL 3816279, at *4 (E.D. Va. June 4, 2019) (citing *Alkire v. N.L.R.B.*, 716 F.2d 1014, 1020 (4th Cir. 1983)). In deciding whether two companies are controlled substantially by the same entities, courts have considered whether the business purpose, management, equipment, operation, supervision, ownership, or customers are the same. *See Bd. of Trustees Sheet Metal Workers' Nat'l Pension Fund v. Crenshaw & Burke Constr., Inc.*, No. 119-cv-561TSETCB, 2020 WL 535970, at *3 (E.D. Va. Jan. 17, 2020), *report and recommendation adopted*, No. 1:19-cv-561, 2020 WL 534050 (E.D. Va. Feb. 3, 2020).

First, based on the facts alleged in the instant case, which Defendants admit by failing to respond to the Complaint, NWI Solutions and NWI Air appear to be controlled by substantially the same entity, thus satisfying the first prong of the alter ego ERISA analysis. NWI Air was incorporated in October 2023, and operated at the same time as NWI Solutions until NWI Solutions' formal dissolution in March 2024. Compl. ¶ 24. Both Defendants operated from the same location at 2686 Willowcreek Road, Suite B, Portage, Indiana 46368. *Id.* NWI Solutions is owned and operated by a husband and wife, John and Melissa Lopez, and NWI Air is owned by John Lopez. *Id.* Melissa Lopez is the registered agent for NWI Solutions and John is the registered agent of NWI Air, and both are registered at the same address at 2883 Charlotte Street, Portage, Indiana 46368. Such facts show both overlapping ownership and management. The Defendants also employed the same or similar classification of employees, with the same or similar training, to perform the same type of work in the same industry and geographic market, indicating that the customers of both companies are the same. *Id.*

Second, the Fund has established the second prong of the alter ego test because it is reasonably foreseeable that NWI Solutions would benefit from NWI Air taking over NWI Solutions' work under

the CBA. NWI Air is not a signatory to the Local 20 CBA. Compl. ¶ 25. By NWI Air completing the covered work under the CBA, NWI Solutions benefited through dissolution of that company and eliminating its labor obligations under the CBA. *Id.* Additionally, it is likely that NWI Solutions reasonably foresaw the benefit in eliminating its labor obligations because NWI Solutions and NWI AIR are owned and operated out of the same location by husband and wife John and Melissa Lopez. Compl. ¶¶ 24, 26. The timeline between NWI Air's incorporation and NWI Solution's cessation of labor obligations also supports the conclusion that NWI Air was an alter ego of NWI Solutions because NWI Air was incorporated in October 2023, only seven (7) months after NWI Solutions' NPF obligations ended in February 2023. Compl. ¶ 24. By NWI Air performing the same work in the same industry with the same employees of NWI Solutions, but as a "non-union operation," NWI Air did not have to provide benefits pursuant to the CBA. *See Bd. of Trustees, Sheet Metal Workers' Natl. Pension Fund v. JTL Air Conditioning & Refrigeration, Inc.*, No. 119CV00169LMBMSN, 2019 WL 3816279 (E.D. Va. June 4, 2019) (explaining that a company that was a signatory to a collective bargaining agreement avoids statutory and contractual obligations when its operations are transferred to the alter ego company and there is no continuing liability). Accordingly, the second prong of the ERISA alter ego test is met. Having found that Plaintiff pled sufficient facts showing that both prongs are met, the Court finds that NWI Air is NWI Solution's alter ego and should be held joint and severally liable for all damages and attorneys' fees, and costs for this action.

**C. Attorneys' Fees and Costs**

Finally, Plaintiff seeks $3,222.98 in attorneys' fees and costs. Mem. in Supp. of Mot. for Default J at 17; Decl. of Diana M. Bardes (hereinafter, "Bardes Decl."). When a plaintiff is awarded judgment to collect unpaid sums under ERISA, the plaintiff is entitled to collect reasonable attorneys' fees and costs of the action. 29 U.S.C. § 1132(g)(2)(D).

Plaintiff provided a declaration from their attorney and a detailed billing statement in support

of their request for attorneys' fees and costs. Bardes Decl. In those documents, Plaintiff claims $610.98 in costs and $2,612.00 in attorneys' fees based on 13 hours of expended counsel time "spent at a pre-litigation rate of $275 per hour and a litigation rate of $300 per hour for partners, a rate of $250 per hour for associates, and a rate of $165 per hour for paralegals." Bardes Decl. at 1–2. Time spent by counsel includes drafting and filing pleadings, conducting legal research, and arranging for service of process. *Id.* The undersigned finds these rates to be consistent with reasonable rates charged in the Eastern District of Virginia for like matters and the number of billable hours spent on the case to be reasonable. Therefore, the undersigned finds Plaintiff's request for attorneys' fees and costs to be reasonable and recommends an award of $3,222.98.

## IV. RECOMMENDATION

The undersigned Magistrate Judge recommends entry of default judgment in favor of the Board of Trustees of the Sheet Metal Workers' National Pension Fund against the Defendants. In sum, Plaintiff is entitled to damages in the amount of $41,041.79 and attorneys' fees and costs in the amount of $3,222.98, for a total of $44,264.77.

## V. NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

/s/

September 4, 2026
Alexandria, Virginia

Ivan D. Davis
United States Magistrate Judge